IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY PORTER,

     Petitioner,

v.                                       No. 2:15-cv-12704-JDB-drg

DANA NESSEL,

     Respondent.

ORDER DIRECTING CLERK TO MODIFY DOCKET,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

On July 28, 2015, Petitioner, Anthony Porter, a Michigan prisoner who has been released on parole, filed a *pro se* habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254.[1] (Docket Entry ("D.E.") 1.)  For the reasons that follow, the Petition is DENIED.

BACKGROUND

The following background summary is drawn from the state court record (D.E. 10) and the decision in Porter's direct appeal.  *See People v. Porter*, Docket No. 310293, 2013 WL 3814376, at *1 (Mich. Ct. App. July 23, 2013) (per curiam), *remanded in part, appeal denied in part*, 845 N.W.2d 107 (Mich. 2014).  In May 2011, Porter was arrested and charged with one count of first-degree, and one count of second-degree, criminal sexual conduct.  (D.E. 10-1 at PageID 135-36.) The arrest occurred "almost four years after the victim's report to the police" in 2007.  *Porter*, 2013 WL 3814376, at *1.   A jury trial on both counts was begun in November 2011 in the Circuit

---

[1]Petitioner remains "in custody" for purposes of § 2254 while on parole.  *See DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993); *see also* 28 U.S.C. § 2254(a).

Court for the Third Judicial Circuit of Michigan. (D.E. 10-1 at PageID 137.) On the third day of trial, the judge declared a mistrial due to the prosecution's violation of discovery rules. (*Id.*)

A second trial was held in March 2012. (*Id.* at PageID 138.) The victim, who was twenty-one years old at the time of trial, testified that, when she was ten years of age, she was at home with her brother and the defendant, who was her uncle. (D.E. 10-11 at PageID 831-33, 835, 837-38.) Porter was babysitting the children while their mother was at work. (*Id.* at PageID 835.) After the victim finished her bath on the second floor of the home, she came downstairs in her nightgown and asked her uncle if he had any lotion. (*Id.* at PageID 839-40.) He told her to follow him to the basement where he stored bins containing his belongings. (*Id.* at PageID 840.) Once in the basement, Porter asked her if she loved him, and she responded in the affirmative. (*Id.* at PageID 842.) He then exposed himself to her, grabbed her hand, and placed it on his penis. (*Id.* at PageID 842-43.) He "laid [her] down" on the basement floor and "pulled [her] panties down." (*Id.* at PageID 843.) The defendant then "tr[ied] to insert" his penis into her vagina. (*Id.* at PageID 844.) His penis touched "the hole" where "[b]abies" come out, causing her pain. (*Id.*) Upon hearing the victim's brother open the basement door, the defendant jumped up and the victim ran upstairs. (*Id.*) Her brother asked her what was happening and what was wrong, but she told him nothing. (*Id.* at PageID 844-45.) Porter then came upstairs to the victim's bedroom and told her not to tell anyone about what he had done. (*Id.* at PageID 845.) The next day, he again told her not to tell anyone about the incident. (*Id.* at PageID 848.)

The victim further testified that she told her stepsister of the abuse several years later, and eventually spoke with her mother about it. (*Id.* at PageID 849-51, 982.) On cross-examination, defense counsel pointed out discrepancies between the victim's current testimony and her prior

testimony regarding how old she was when she reported the abuse to family members. (*Id.* at PageID 867-75.)

The victim's mother testified that the defendant was her ex-husband's brother and that, in 2000, he occasionally babysat her children while she worked. (*Id.* at PageID 977-78, 980-81.) In 2007, a family member told her that the victim had been sexually abused years earlier. (*Id.* at PageID 982.) The mother confirmed it with the victim and, the next day, went to the police station with the victim and her other daughter to report the abuse. (*Id.* at PageID 986-91.) Thereafter, the defendant stopped visiting the family. (*Id.* at PageID 993.) On cross-examination, the witness affirmed that, prior to being told about the abuse, she did not notice anything different in the victim's relationship with the defendant. (*Id.* at PageID 1001.)

An officer from the Detroit, Michigan, Police Department testified that he took the victim's statement when she reported the abuse in 2007. (*Id.* at PageID 819-23.) A second officer testified that she was in charge of the case and that she took statements from the victim and her mother and brother. (*Id.* at PageID 1003-05.) She attempted to locate Porter at his last known address and at area homeless shelters but could not find him. (*Id.* at PageID 1006-07.) The arrest information was subsequently turned over to the Fugitive Apprehension Team and he was taken into custody. (*Id.* at PageID 1007.) A sergeant from the same department testified that she secured a written statement from Porter in which he denied having any sexual contact with his niece, insisting that he had instead accidentally touched her breast while they were "horsing around in the living room." (*Id.* at PageID 964-65.)

The defense sought to call his former girlfriend, Shirley Anderson, to testify as to what he told her when she confronted him with the victim's allegations. *Porter*, 2013 WL 3814376, at *1.

The prosecution objected, arguing that the testimony was hearsay. The trial court agreed and ruled that Anderson would not be permitted to testify. *Id.*

The jury found the defendant guilty as charged, and he was "sentenced to consecutive prison terms of 7 to 20 years for the [first-degree criminal sexual conduct] conviction and 5-3/4 to 15 years for the [second-degree criminal sexual conduct] conviction." *Id.* On appeal, defense counsel argued that the trial court erred when it excluded Anderson's testimony. *Id.* "[I]n a supplemental brief filed *in propria persona*," the defendant "raise[d] several additional issues." *Id.* at *2. Finding no merit to any of the defense arguments, the Michigan Court of Appeals affirmed the convictions. *Id.* at *6. Porter appealed to the Michigan Supreme Court, which remanded for resentencing "to reflect that the sentences . . . are to run concurrently." *Porter,* 845 N.W.2d at 107. As to all other issues, the high court denied leave to appeal. *Id.*

THE PETITION

The Petition presents the following claims:

Claim 1: "[T]he trial court erred in not permitting a defense witness to testify."[2] (D.E. 1 at PageID 5.)

Claim 2: "[T]he district court magistrate abuse[d] her discretion in binding [Petitioner] over on the first[-]degree" criminal sexual assault charge. (*Id.* at PageID 7.)

Claim 3: Petitioner was denied "procedural due process[] when the arrest was delayed after the issuance of a warrant." (*Id.* at PageID 8.)

Claim 4: "[T]he circuit court judge abuse[d] her discretion when she denied the defendant's motion to dismiss [the] case with prejudice" due to the state's discovery violations. (*Id.* at PageID 10.)

Claim 5: Petitioner's attorney rendered ineffective assistance by failing to consult with an expert on the psychology of sexual abuse and educate himself sufficiently

---

[2]For readability, quotations from the Petition are corrected for irregular capitalization and punctuation.

on the science of sexual abuse, and by not adequately investigating the case.  (*Id.* at PageID 15.)

Claim 6:  The prosecutor engaged in misconduct by using perjured testimony.  (*Id.* at PageID 16.)

Claim 7:  The evidence was insufficient to support the first-degree criminal sexual conduct conviction.  (*Id.* at PageID 17.)

## SECTION 2254 STANDARDS

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under the statute, habeas relief is to be granted only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the United States Supreme] Court[,] or that it 'involved an unreasonable application of' such law[,] or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court."  *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)) (internal citations omitted).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An unreasonable application of federal law occurs when the state court, having invoked the correct

governing legal principle, "unreasonably applies the [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *See Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are rebutted by clear and convincing evidence and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir.) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted), *cert. denied,* 138 S. Ct. 518 (2017).

Before a federal court will review the merits of a § 2254 claim, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works along with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process) and he can no longer exhaust because a state procedural rule or set of rules have closed off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state

court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Miss.*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

## DISCUSSION

Respondent, Dana Nessel, argues that two of Petitioner's claims are procedurally defaulted and all claims are either without merit or non-cognizable on federal habeas review. [3] Petitioner did not file a reply, although he was allowed to do so. The Court addresses the claims in reverse order.

I.      Claim 7:  Insufficiency of the Evidence to Convict

Petitioner asserts that the evidence was insufficient to convict him of first-degree criminal sexual conduct, insisting that there was no proof of an intrusion into the victim's genital opening.

---

[3]In light of Porter's parole status, the Clerk of Court is **DIRECTED** to substitute Michigan Attorney General Dana Nessel for Warden Bonita Hoffner as Respondent.

Respondent argues that the claim, which was addressed on the merits by the Michigan Court of Appeals, is baseless. The Court agrees.

The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (*Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction" is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19. The standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319; *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the statute's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or based on "an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

As relevant to Petitioner, an individual who "engage[s] in sexual penetration with [a] person . . . under 13 years of age" commits first-degree criminal sexual assault under Michigan law. *See Porter*, 2013 WL 3814376, at *2 (citing Mich. Comp. Laws § 750.520b(1)(a)). "Sexual

penetration includes any intrusion, however slight, of any part of a person's body into the genital or anal opening." *Id.* (citing Mich. Comp. Laws § 750.520a(r)).

On direct appeal, the inmate argued that the evidence was insufficient to convict him of first-degree criminal sexual conduct because the victim did not testify about an intrusion into the genital opening and, at best, merely described an attempt at intrusion. (D.E. 10-15 at PageID 1225.) Applying *Jackson*'s evidence-sufficiency standards, as articulated in state cases, the Michigan Court of Appeals rejected the argument, stating as follows:

> The victim testified at trial that, when she was 10 years old, defendant attempted to insert his penis into her vagina, that his penis actually touched her vagina or "the hole" where babies come out, and that it hurt her. The victim's testimony concerning pain provided ample, circumstantial evidence of penetration. "Circumstantial evidence and reasonable inferences that arise from the evidence can constitute sufficient proof of the elements of the crime." *People v. Akins,* 259 Mich. App. 545, 554; 675 N.W.2d 863 (2003). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v. Hardiman,* 466 Mich. 417, 428; 646 N.W.2d 158 (2002). Moreover, in a prosecution for criminal sexual conduct, "[t]he testimony of a victim need not be corroborated[.]" [Mich. Comp. Laws §] 750.520h. Viewing the evidence in a light most favorable to the prosecution, the victim's testimony and associated circumstantial evidence of penetration was sufficient to establish the elements of [first-degree criminal sexual conduct] beyond a reasonable doubt.

*Porter*, 2013 WL 3814376, at *6.

The appellate court's decision is not contrary to clearly established Supreme Court law because the court correctly identified *Jackson*'s standards and applied them to the facts of Petitioner's case. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The decision is also not based on an unreasonable determination of the facts or an unreasonable application of *Jackson*'s standards to the facts. The victim testified that she felt

Porter's penis touching the hole where "[b]abies" "come out." (D.E. 10-11 at PageID 844.) She described it as painful and that it seemed as if his penis was "too big" to fit. (*Id.*) The testimony gives rise to a reasonable inference that Petitioner inserted his penis, however slightly, into the genital opening. *See People v. Trimble*, No. 336006, 2018 WL 4259369, at *2 (Mich. Ct. App. Sept. 6, 2018) (per curiam) (citing *People v. Whitfield*, 388 N.W.2d 206 n.20 (Mich. 1986)) ("[Mich. Comp. Laws §] 750.520b(1)(a) does not require a defendant to penetrate a victim's vagina; it only requires evidence of penetration to a victim's 'genital opening,' which, for a female victim, includes external genital organs such as the labia majora"). The jury implicitly drew the inference of penetration and credited the victim's testimony. Consistent with *Jackson*'s commands, the Michigan Court of Appeals did not disturb the jury's determinations. *See Jackson*, 443 U.S. at 319 (the reviewing court should "give[] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts").

On this record, the state appellate court's conclusion that the evidence was sufficient to convict Porter of first-degree criminal sexual conduct was not unreasonable. Claim 1 is DENIED.

II. Claim 6:  Prosecutorial Misconduct

The inmate avers that the prosecution engaged in misconduct by eliciting false testimony from the victim, to wit, "that her brother came downstairs" during the sexual assault. (D.E. 1 at PageID 16.) He complains that such testimony was false because it would have been "physically impossible for her brother not to have seen [the assault] in a[n] open basement [where] he would [have] had a clear view," but the "brother never stated in his statement that he witness[ed] this alleged incident." (*Id.*) The claim was raised, but rejected, on direct appeal. *See Porter*, 2013 WL 3814376, at *5.

Finding that the issue was "[u]npreserved," the Michigan Court of Appeals applied plain

error review and held that the record did not support the allegation that the prosecutor engaged in

misconduct:

> Defendant first contends that the prosecutor knowingly presented false testimony because the victim's version of events was physically impossible. We fully acknowledge that a conviction obtained through the knowing use of perjured testimony violates a defendant's due process rights. *People v. Aceval,* 282 Mich. App. 379, 389-390; 764 N.W.2d 285 (2009). But the prosecution did not knowingly present false testimony in this case. The incident on which the charges were based occurred more than 10 years before trial, and there was no testimony that police or the prosecutor went to the crime scene. Although defendant asserts that the brother could not have been halfway down the stairs, and could not have seen the assault as the victim testified, there is no evidence that the prosecutor had any knowledge of the layout of the basement. Further, the victim's testimony was not that the brother came halfway down the stairs during the assault. Both at the preliminary examination and at the second trial, the victim testified that she and defendant heard the brother coming and that defendant jumped up. Further, the brother did not testify. Thus, there is no way of knowing whether he saw anything. There is no evidence that the prosecution knowingly presented false testimony on this issue.

*Id.*

Respondent argues that Porter procedurally defaulted Claim 6 because he failed to preserve

it at the trial level. She also submits, in the alternative, that the appellate court's plain error review

was an adjudication on the merits entitled to AEDPA deference and that the claim is unfounded

under that statute's standards. [4]

---

[4]Although Petitioner maintains that there was "a substantial amount of prejudicial act[s] of prosecutorial misconduct," he only alleges prosecutorial misconduct relating to the victim's alleged false testimony about her brother coming down the basement stairs. (*See* D.E. 1 at PageID 16.) Despite the limited scope of Claim 6, Respondent has addressed two other alleged instances of prosecutorial misconduct that Petitioner raised on direct appeal but not in the instant Petition: the prosecutor's alleged vouching for the credibility of the victim and arguing facts not introduced into evidence. (*See* D.E. 9 at PageID 91.) Had Porter raised these two additional claims of prosecutorial misconduct in the Petition, he still would not be entitled to federal habeas relief; the transcripts of the prosecution's opening statement and closing argument do not reveal any misconduct. (*See* D.E. 10-11 at PageID 810-14; D.E. 10-12 at PageID 1051-62, 1079-90.) *See also Porter,* 2013 WL 3814376, at *5 (finding no misconduct).

Because the claim fails even under de novo review, this Court need not decide if it was procedurally defaulted or whether the Michigan Court of Appeals' plain error review constituted an adjudication on the merits. *See Phillips v. Hoffner*, ___ F. App'x ___, 2018 WL 5794466, at *5 (6th Cir. Nov. 5, 2018) (acknowledging that the Sixth Circuit has "reached varying conclusions as to whether plain error review by a state court constitutes adjudication on the merits," but finding that petitioner's claim was without merit even under de novo review) (collecting cases)). It is clearly established that "[t]he deliberate deception of court and jury by the presentation of testimony known to be perjured violates a defendant's due-process rights." *Monea v. United States*, ___ F.3d ___, 2019 WL 275921, at *5 (6th Cir. Jan. 22, 2019) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)) (internal quotation marks omitted); *see also Giglio v. United States*, 405 U.S. 150, 153 (1972). "To prevail on such a claim, [the petitioner] must show that the Government knowingly presented false testimony that materially affected the proceeding." *Monea*, 2019 WL 275921, at *5 (citing *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)). A petitioner cannot simply point to "[m]ere inconsistencies in the testimony," but must show that the testimony is "indisputably false." *Id.* (quoting *Lochmondy*, 890 F.2d at 823) (internal quotation marks omitted).

In this case, the inmate has failed to carry his burden of establishing that the prosecution knowingly used perjured testimony. To begin with, he has not shown an indisputable falsehood in the victim's testimony. He alleges that she testified "that her brother came downstairs while the defendant was trying to insert his penis in her." (D.E. 1 at PageID 16.) The trial transcript shows, however, that the victim did not make that statement. Rather, she testified that, when she heard the basement door open, the defendant "jumped up" and she "got up and ran upstairs." (D.E. 10-11 at PageID 844.) She then stated that her "brother actually came halfway down the stairs and

asked what y'all doing, and [she] just ran past him and went upstairs." (*Id.* at PageID 844-45.) At best, her testimony is ambiguous as to whether her brother was standing halfway down the stairs at the time of the assault or whether he reached the halfway point as she was passing him.

Even assuming the victim's testimony was false, there is no evidence the prosecutor knew it was false. Petitioner alleges that the structure of the stairs and the openness of the basement were such that a person standing halfway down the stairs would have had a clear view of the assault. But, as the Michigan Court of Appeals noted, "[t]he incident on which the charges were based occurred more than 10 years before trial, and there was no testimony that police or the prosecutor went to the crime scene." *Porter*, 2013 WL 3814376, at *5. This Court's review of the record confirms that no such testimony was taken. Claim 6 is therefore without merit and is DENIED.

III.     Claim 5:  Ineffective Assistance of Counsel

Porter maintains that his trial attorney rendered ineffective assistance during the second trial by foregoing a consultation with a psychological expert in the field of sexual abuse and not educating himself on the "scientific issues" of such abuse. (D.E. 1 at PageID 15.) He also alleges that counsel failed to adequately investigate his case. The arguments were raised on direct appeal but rejected. *See Porter*, 2013 WL 3814376, at *4-5. Nessel contends that the claim, in its entirety, is procedurally defaulted and, alternatively, is without merit.

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense."

*Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To demonstrate deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court considering a claim of ineffective assistance must apply "a strong presumption" that counsel's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options." *Id.* at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

Prejudice is established where there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

In Porter's case, the Michigan Court of Appeals undertook plain error review of his ineffective-assistance arguments because it found that the issues were "unpreserved." *Porter*,

2013 WL 3814376, at * 4. Applying the standards enunciated in *Strickland*, the court denied relief. *Id.*

As to Petitioner's contention that defense counsel did not consult with an appropriate expert and educate himself on the relevant scientific issues, the appellate court determined that counsel's performance was not deficient. From the record, "it appear[ed] that trial counsel did consult with an expert in the psychology of sexual abuse," as the "proposed expert witness, a licensed clinical psychologist, wrote that her 'analysis, conclusions, and opinions are derived from [her] specialized education, experience, and clinical training in the assessment of sexual abuse investigations.'" *Id.* The witness, however, was not allowed to testify. *Id.* The Michigan Court of Appeals also concluded that Porter did not establish prejudice, as he did "not identify any substantial defense of which he was deprived" due to the absence of expert testimony. *Id.*

The appellate court further found that he had not shown any deficiency in his attorney's investigation of the case. *Id.* at *5. The prisoner "fail[ed] to identify what trial counsel failed to investigate" and the record showed that counsel hired an investigator. *Id.*

As noted, Respondent insists that Petitioner procedurally defaulted both of his attorney-ineffective-assistance arguments because he did not preserve them at the trial level. She also argues, in the alternative, that the appellate court's plain error review was an adjudication on the merits entitled to AEDPA deference and that the claim is devoid of basis under that statute's standards. (D.E. 9 at PageID 93.) The Court need not address those arguments since the claim fails even under de novo review.

The record reflects that counsel consulted with an expert psychological witness, Catherine Oakla, who was prepared to testify in the first trial about "memory and delay in [the] reporting" of sexual assault and "the fact that forensic protocol was not followed" when the victim's statement

was taken.  (D.E. 10-5 at PageID 256, 259.)  The trial court excluded the expert's testimony, finding that it was unhelpful to, and might confuse, the jury.  (*Id.* at PageID 262.)  Petitioner's allegation, therefore, that his attorney did not consult with an expert or apprise himself of the science of sexual assault is contradicted by the record.

Furthermore, even if it could be said that trial counsel performed deficiently by failing to consult with or hire a *second* expert for the *second* trial, Porter has not established that such a failure resulted in prejudice.  In particular, he has not explained what testimony a second expert would have provided and what defense theory that testimony would have supported.  Therefore, he is unable to demonstrate that the trial outcome would have been different had his attorney secured a second expert.  *See, e.g., Gabrion v. United States*, File No. 1:15-cv-447, 2018 WL 4786310, at *55-56 (W.D. Mich. Oct. 4, 2018), *appeal filed*, No. 18-2382 (6th Cir. Dec. 3, 2018) (petitioner failed to establish that he was prejudiced by his attorney's failure to secure a mental health expert where he did not show what the expert's testimony would have been).

With regard to counsel's pretrial investigation, the inmate has not supported his bald allegation of deficient performance with any reference to the record.  Nor does he identify evidence or testimony which, had it been discovered in an investigation, would have resulted in a different outcome in his case.  *See Monea*, 2019 WL 275921, at *4 (citing *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)) ("It is not enough for [a petitioner] to argue that a different attorney would [have] done a better job.  What matters is whether it would have made a difference.").

Accordingly, the Court finds that Petitioner has not established that his attorney rendered ineffective assistance.  Claim 5 is DENIED.

IV.     Claim 4:    Mistrial

Petitioner submits that the trial "judge abuse[d] her discretion" when she declared a mistrial as a remedy for the state's failure to give the defense certain discovery materials, rather than "dismiss[ing] [the] case with prejudice."   (D.E. 1 at PageID 10.)   He also insists that the prosecution was thereby improperly given "a second chance to convict[]" him.   (*Id.*)   The Court construes the latter assertion as an argument that Porter's right to be free from double jeopardy was violated.   The prisoner advanced these arguments on direct appeal, but the Michigan Court of Appeals rejected them.   *See Porter*, 2013 WL 3814376, at *3-4.   Respondent argues that Claim 4 is non-cognizable in part and without merit in part.

A.      Abuse of Discretion

At the beginning of the Petitioner's first trial, "it was discovered that defendant was not provided with statements from two witnesses, the victim's mother and another unnamed witness, apparently because of an undiscovered clerical error."   *Id.* at *3.   "It was later discovered that defendant was not provided with an updated police report" and, "[o]n the morning before the second day of testimony, it was revealed that the prosecution had discovered a statement by defendant the night before and had just provided the statement to defendant."   *Id.*   Defense counsel filed a motion seeking "dismissal with prejudice because of the late receipt of the discovery, or, in the alternative a mistrial."   *Id.*   In granting a mistrial, the trial judge "found that defendant's defense strategy was undermined by the late discovery, that there was no intentional attempt to gain a tactical advantage by the prosecution, . . . that the matter did not warrant dismissal with prejudice," and "that there was manifest necessity for a mistrial."   *Id.*

On review of the record below, the Michigan Court of Appeals held that the "trial court [had] correctly found that the prosecution violated [state] discovery rules," but determined that the

court did not abuse its discretion in declaring a mistrial in lieu of dismissal of the case with prejudice. *Id.* at *4. The appellate court noted that the state discovery "rules provided the trial court with substantial discretion and latitude to remedy the[] discovery violations." *Id.* (citing Mich. Court Rule 2.601(J)).

Porter's complaint that the appellate court improperly found no abuse of discretion under state law is not cognizable in this federal habeas proceeding. *See generally Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case."); *see also Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) (petitioner's claim that the prosecutor violated a state discovery rule was "not cognizable on habeas, because it [was] not a constitutional violation"). Claim 6 must therefore be dismissed in part.

B.      Double Jeopardy

In addressing Porter's double jeopardy claim, the Michigan Court of Appeals first identified the applicable legal standards:

> The Fifth Amendment protects criminal defendants from being twice placed in jeopardy for the same offense. [*People v.*] *Szalma,* 487 Mich. [708,] []715-16 [(Mich. 2010)]. The Michigan Constitution provides the same protection. *Id.* However, "[w]here the motion for mistrial was made by defense counsel, or with his consent, and the mistrial was caused by innocent conduct of the prosecutor or judge, or by factors beyond their control, or by defense counsel himself, retrial is . . . generally allowed, on the premise that by making or consenting to the motion the defendant waives a double jeopardy claim." *People v. Dawson,* 431 Mich. 234, 253; 427 N.W.2d 886 (1988).

*Porter*, 2013 WL 3814376, at *4.

On review of the record, the appellate court found that "the prosecution's discovery violations were innocent and not purposeful" and that the "defendant [had] requested the mistrial." *Id.* It therefore concluded that "retrial was permitted and defendant's constitutional protection

against double jeopardy was not violated." *Id.* The decision easily passes muster under the AEDPA's standards.

"The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Volpe v. Trim*, 708 F.3d 688, 695-96 (6th Cir. 2013) (quoting U.S. Const. amend. V). The Supreme Court has made clear that the clause "precludes the State from making repeated attempts to convict an individual for an alleged offense." *Harpster v. Ohio,* 128 F.3d 322, 327 (6th Cir. 1997) (quoting *United States v. Dinitz,* 424 U.S. 600, 606 (1976)) (internal quotation marks omitted). Therefore, "retrial in cases in which the defense has moved for a mistrial is . . . barred by the Double Jeopardy Clause when the prosecution's misconduct is *intended* to provoke a motion for mistrial. *Sanborn v. Parker*, 629 F.3d 554, 581 (6th Cir. 2010) (citing *Or. v. Kennedy,* 456 U.S. 667, 676 (1982)). Although citing to state cases, the Michigan Court of Appeals correctly identified these governing principles and, thus, cannot be said to have rendered a decision "contrary to" clearly established Supreme Court law. *See Williams*, 529 U.S. at 406.

The appellate court's decision was also not based on unreasonable factual determinations. It is undisputed that the defense, not the prosecution, requested the mistrial as an alternative remedy to dismissal of the case with prejudice. (*See* D.E. 10-6 at PageID 458.) In addition, the transcript from the first trial supports the finding that the prosecution did not violate the discovery rules purposefully or intentionally. In argument on the motion, the prosecutor explained the circumstances surrounding the state's failure to produce the discovery materials earlier. (*See id.* at PageID 453-54.) Based on that explanation, and on statements made by "both counsel in chambers," the trial judge determined that the violations were "really a series of errors" that were

"external to any kind of intent on the part of the People." (*Id.* at PageID 460-61.) She noted, without objection, that defense counsel had earlier "conceded" that "he d[idn't] attribute any . . . intent to try to gain some tactical advantage on the part of the People." (*Id.* at PageID 461-62.) Petitioner has not identified any clear and convincing contrary evidence.

Because the discovery violations were not intentional or purposeful, the state appellate court's conclusion that there was no double jeopardy violation is patently reasonable. *See, e.g., Salyers v. Metrish*, No. 07-cv-10977, 2009 WL 3242004, at *11 (E.D. Mich. Oct. 2009) (Michigan Court of Appeals' rejection of petitioner's double jeopardy claim under *Kennedy* was not unreasonable where defense counsel conceded that the prosecution did not act in bad faith). For these reasons, Claim 4 is DISMISSED in part as non-cognizable and DENIED in part as meritless.

## V.      Claim 3:   Delayed Arrest

Porter asserts that his constitutional rights were violated by the more than three-year delay between the issuance of the warrant and his arrest. He raised the claim on direct appeal, but the Michigan Court of Appeals denied relief. *See Porter*, 2013 WL 3814376, at *2. Respondent argues that the state appellate court's rejection of the claim was not unreasonable. The Court agrees.

Relying on state cases, the Michigan Court of Appeals identified the governing legal standards as follows:

> "There is no constitutional right to be arrested." The question is whether the record presents evidence of prejudice resulting from the delay. For a violation of due process rights to occur, there must be actual and substantial prejudice and intent by the prosecution to gain a tactical advantage. Substantial prejudice is defined as "that which meaningfully impairs the defendant's ability to defend against the charge in such a manner that the outcome of proceedings was likely affected." The defendant must show more than generalized allegations of prejudice.

*Id.* (internal citations omitted).

Upon review of the record, the appellate court found "no evidence that the prosecution had any intent to gain a tactical advantage." *Id.* Specifically, the law enforcement witnesses "testified that they went to defendant's last known address" and, "[w]hen they did not find him there, they placed the warrant in the [Michigan Law Enforcement Information Network] and turned the warrant over to the Fugitive Apprehension Team." *Id.* The Michigan Court of Appeals concluded that the officers' testimonies "showed, at most, negligence rather than any intent to gain a tactical advantage." *Id.*

The appellate court also found no proof that the defendant had been prejudiced. *Id.* at *3. His "claim[s] that his memory was dulled due to the passage of time and that he was unable to reach unnamed associates who may have been potential alibi witnesses" were insufficient as they amounted to nothing more than "generalized allegations." *Id.* In addition, the court concluded that any diminution in memory could "be attributed to the victim's delay in reporting the crime," not to the delay between the issuance of the warrant and the arrest. *Id.* The court determined that no harm flowed from the defendant's alleged inability to reach potential alibi witnesses because the victim "did not say the crime occurred on a specific day or even a specific month." *Id.* The Michigan Court of Appeals therefore held that Porter's "due process rights were not violated by the delay in his arrest." *Id.*

Under clearly established Supreme Court law, "[d]ismissal for pre-indictment delay is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Brown*, 667 F.2d 566, 568 (6th Cir. 1982) (per curiam) (citing *United States v. Lovasco*, 431 U.S. 783 (1977) & *United States v. Marion*, 404 U.S. 307, 325 (1971)). Although citing state

cases, the Michigan Court of Appeals identified and applied this legal standard. Its decision is therefore not contrary to clearly established Supreme Court law. *See Williams*, 529 U.S. at 406.

Nor is the decision based on an unreasonable application of the governing standard or on unreasonable factual determinations. Petitioner has not identified any clear and convincing evidence to undermine the finding that the delay in arresting him was unintentional. He also has not pointed to any proof that would support his general allegations of prejudice. Thus, in light of the record before it, the Michigan Court of Appeals did not unreasonably conclude that Porter had not shown that his due process rights were violated by the delay in his arrest. Claim 3 is DENIED.

VI.     Claim 2:     Insufficiency of the Evidence at the Preliminary Hearing

Petitioner argues that he is entitled to federal habeas relief on the ground that there was insufficient evidence at the preliminary hearing to bind him over for trial on the charge of first-degree criminal sexual conduct. He insists that there was no evidence of penetration. Respondent submits that the claim is not cognizable in this federal habeas proceeding.

As previously noted, federal habeas relief may be granted only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). It is well settled that there is no fundamental federal right to a preliminary hearing. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) ("[A] conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."). "Further, it is an established rule that illegal arrest or detention does not void a subsequent conviction." *Leonard v. Palmer*, No. 13-CV-13505, 2015 WL 4715892, at *11 (E.D. Mich. Aug. 7, 2015) (quoting *Gerstein*, 420 U.S. at 119) (internal quotation marks omitted). Thus, "[a] claim that evidence is insufficient to bind an accused over for trial does not present an issue cognizable in a petition for federal habeas relief." *Partridge v. Palmer*, No. 16-2219, 2017 WL

3951853, at *2 (6th Cir. Mar. 21, 2017); *see also McCray v. Vasbinder*, No. 05-10219, 2008 WL 2782923, at *7 (E.D. Mich. July 17, 2008) ("The bind-over decision itself invokes a question of state law, which is not cognizable on habeas corpus review.").[5]   Claim 2 is therefore DISMISSED as non-cognizable.

## VII.    Claim 1:  Exclusion of Witness

The inmate maintains that the trial court abused its discretion and violated state law or the Michigan Rules of Evidence by not allowing his former girlfriend to testify about comments he made to her.  The claim was raised, but rejected, on direct appeal.  *See Porter*, 2013 WL 3814376, at *1.  Nessel submits that the state appellate court's decision was not unreasonable.

The record reflects that Anderson would have testified that, upon confronting Porter about the accusations against him and telling him "that he needed to call his mother," he told her "that the victim was lying, that he would never do anything like that, and that he was not going to call his mother because they were 'on some bullshit.'"  *Id.*; (*see also* D.E. 10-11 at PageID 984.)

The defense argued that Anderson should be allowed to testify because her statements were not hearsay as they would be offered "to establish why [the defendant] did not have contact with his family after the accusations were known."  *Porter*, 2013 WL 3814376, at *1.  Rejecting that assertion, the trial court did not permit Anderson to testify.  *Id.*  On direct appeal, the Michigan Court of Appeals held that, even if the statements were improperly excluded, the defendant was not prejudiced by the trial court's decision:

> Defendant cannot establish that, more probably than not, the trial court's evidentiary ruling on this matter affected the outcome of his trial.  [Mich. Comp. Laws §] 769.26; [*People v.*] *Lukity,* 460 Mich. [484,] 496 [(Mich. 1999)].  Defendant's statements to Anderson concerning his reasons for not contacting his mother did

---

[5]In any event, as with the victim's trial testimony, penetration may be inferred from her testimony at the preliminary hearing.  (*See* D.E. 10-2 at PageID 163-64.)

not make it any more or less likely that he committed the crimes.  Any error in excluding the statements was harmless, and we perceive no error requiring reversal.

*Id.*

Porter's claim that the state appellate court's decision was unreasonable is not properly before this Court.  A claim that the state court misapplied state evidentiary rules is not cognizable in a federal habeas petition.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Wilson v. Parker*, 515 F.3d 682, 705 (6th Cir. 2008) ("A federal court cannot issue a writ of habeas corpus 'on the basis of a perceived error of state law,'" quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).  On direct appeal, Porter did not address his evidentiary claim as a violation of his federal constitutional rights and he does not aver in the instant case any federal constitutional basis for the claim.[6]

But even if the prisoner had argued that the exclusion of Anderson's testimony rendered his trial fundamentally unfair in violation of due process, *see Estelle*, 502 U.S. at 67, he still would not be entitled to relief.  As the Michigan Court of Appeals pointed out, Porter's "statements to Anderson concerning his reasons for not contacting his mother did not make it any more or less likely that he committed the crimes."  *Porter*, 2013 WL 3814376, at *1.  Because his statements did not tend to exculpate him, he was not deprived of due process by their exclusion.  *See Turpin v. Kassulke,* 26 F.3d 1392, 1396 (6th Cir. 1994) ("The Supreme Court looks to several factors in determining whether a defendant's due process rights require the admission of a particular item of

---

[6]Nessel has not argued that the claim was procedurally defaulted due to Petitioner's failure to advance the claim on direct appeal on federal law grounds.  The Court therefore does not address the procedural default issue.  *Cf. Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (authorizing district courts to raise statute of limitations affirmative defense *sua sponte*, but requiring that parties be given opportunity to be heard).

evidence," including "the extent to which the proffered evidence 'tend[s] to exculpate' the accused," citing *Chambers v. Miss.,* 410 U.S. 284, 297, 302 (1973)).  Accordingly, Claim 1 is DISMISSED.

For all of these reasons, the Petition is DENIED.

APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).  A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition.  Because any appeal by Porter does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that, if the district court certifies that an appeal would

not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *Id.*

In this case, for the same reasons it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore DENIED.[7]

IT IS SO ORDERED this 4th day of February 2019.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[7]If Petitioner files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.